IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARYL WHITAKER, *

    Plaintiff,                                           Civil Action No. RDB-18-0044

v. *

CIENA CORPORATION, *

    Defendant.
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Daryl Whitaker ("Plaintiff" or "Whitaker") brings this action against his former employer Defendant Ciena Corporation ("Defendant" or "Ciena") alleging race discrimination in violation of 42 U.S.C. § 1981. (Am. Compl., ECF No. 17-2.) Currently pending before this Court are Defendant's Motion to Dismiss the Original Complaint, or in the Alternative, Motion for Summary Judgment (ECF No. 7) and Plaintiff's Motion for Leave to file an Amended Complaint (ECF No. 17). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Plaintiff's Motion to Amend (ECF No. 17) is GRANTED[1] and Defendant's Motion (ECF No. 7) is DENIED. Specifically, Defendant's Motion to Dismiss the Original Complaint is DENIED AS MOOT and the Defendant's alternative Motion for Summary Judgment is DENIED WITHOUT PREJUDICE.

---

[1] Also pending is Plaintiff's Motion for Leave to File a Surreply (ECF No. 16), in further support of his opposition to the Defendant's Motion to Dismiss the Original Complaint. Because this Court grants Plaintiff's Motion to Amend the Complaint, this Motion is MOOT.

1

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). In August of 2010, Plaintiff Daryl Whitaker, an African-American male, began working for Defendant Ciena Corporation as the Senior Director of Human Resources for the company's Global Field Operations division. (Am. Compl., ECF No. 17-2 at ¶¶ 4, 56.) As Senior Director, he reported to the Vice President who in turn reported to the Executive Vice President. (*Id.* at ¶ 55.) Whitaker asserts that when he was offered the position of Senior Director, he was promised that he would be promoted to Vice President "as soon as it became vacant" and in the interim would receive the salary of the Vice President position. (*Id.* at ¶¶ 51, 63, 64.) On these terms, Whitaker accepted the job with Ciena. (*Id.* at ¶¶ 64, 66.)

Whitaker asserts that when he began working, he was the only minority on the Human Resources Leadership team and that Ciena's Executive Leadership team was comprised solely of Caucasian men.[2] (*Id.* at ¶¶ 67, 70.) Having observed "Ciena's ethnic composition," he decided to implement a diversity program which he believed was an "essential directive within the scope of his position." (*Id.* at ¶¶ 73, 77.) He asserts, however, that this idea was quickly dismissed by leadership in Human Resources. (*Id.* at ¶ 79.)

Two months after he proposed the diversity program, the Vice President position became vacant. (*Id.* at ¶ 80.) When Whitaker approached Harris about the position, Whitaker

---

[2] Plaintiff does not describe what positions make up the "Human Resources Leadership team" or "Executive Leadership team."

asserts that Harris responded by saying that "there are others at the company who want this job who have been here longer." (*Id.* at ¶ 82.) Plaintiff asserts, however, that there were no other qualified candidates on the Human Resources Leadership team at that time. (*Id.* at ¶ 83.) When the position was still vacant in January of 2011, Plaintiff approached Harris again. (*Id.* at ¶¶ 92-94.) Harris then told him that the Vice President position had been eliminated, and Plaintiff would report directly to Harris. (*Id.* at ¶ 94.)

Over a year and a half later in August of 2012, the then-current Executive Vice President David Rothenstein, who was also General Counsel for Ciena, approached Plaintiff about transferring to a new position. (*Id.* at ¶¶ 103-07.) Specifically, Rothenstein asked Whitaker if he would become Senior Director of Ciena Learning Services in the sales department. (*Id.* at ¶¶ 108-09.) When Plaintiff expressed concerns about transferring to a new department, Rothenstein promised him that he would receive full sales commission for his first six months. (*Id.* at ¶ 112.) Whitaker further alleges that Rothenstein also agreed that in the event Plaintiff left the company, he would receive a severance package based on his former position as Senior Director of Human Resources for the company's Global Field Operations division. (*Id.* at ¶ 113.) Specifically, Whitaker would receive severance pay based on the Senior Director of Human Resources position and Ciena would verify that as Whitaker's title to future prospective employers. (*Id.* at ¶ 114.) Based on these terms, Whitaker "reluctantly accepted the new sales position." (*Id.* at ¶ 118.) During this time, he also learned that Ms. Wagner,[3] a Caucasian female, would be taking his old position in

---

[3] In the Defendant's Motion to Dismiss the Original Complaint, the Defendant states that the Complaint improperly names Ms. Wagner as Judy Wagner rather than her correct name, Trudy Wagner. Defendant also attached Trudy Wagner's affidavit. Plaintiff, however, even in the subsequent Amended Complaint, still refers

3

Human Resources and agreed to train her. (*Id.* at ¶¶ 117, 119-21.)

In November of 2012—three months after Whitaker took his new position and once he completed training Ms. Wagner—he was informed by Rosenstein that his new position as Senior Director of Ciena Learning Services was being eliminated for lack of funding. (*Id.* at ¶¶ 119-22.) He was not, however, officially terminated at that time. (*Id.* at ¶ 126.) He found a position in another department as an entry-level salesman or "Learning Specialist." (*Id.* at ¶¶ 128-31, 135.) When he took the position, he alleges that he was again told that if this position was eliminated, Plaintiff would receive the same severance package as offered by Rothenstein relating to his former position as Senior Director of Human Resources. (*Id.* at ¶ 132.) He then began working in February of 2013 and became an "immediate star" and "received every commission, bonus, and restricted stock gift he was capable of earning." (*Id.* at ¶¶ 137-39.) Nine months later in November of 2013, however, he was told that his position was being eliminated because his "role was not effective." (*Id.* at ¶ 141.) None of the other four Learning Specialists, who were "mostly Caucasian males," were terminated. (*Id.* at ¶ 158.)

On December 27, 2013, Plaintiff received a final termination letter.[4] (*Id.* at ¶ 143.) The letter indicated that his termination would not be effective until January 10, 2014, and he would receive twelve weeks of "regular base salary" severance pay and that Ciena would verify his "title" to perspective employers. (*Id.* at ¶¶ 147, 160.) From the letter, he could not determine whether the company was honoring the severance agreement relating to his former position as Senior Director of Human Resources for the company's Global Field

---

to Judy Wagner. Accordingly, at this stage this Court refers to her only as Ms. Wagner.
[4] He initially received a termination letter on or around December 20, 2013. (ECF No. 17-2 at ¶ 143.)

Operations division. (*Id.* at ¶¶ 146-47.) Whitaker attempted to ask Human Resources, which did not respond to Whitaker until January 10, 2014. (*Id.* at ¶¶ 149-51.) On January 10, 2014, an individual from Human Resources contacted Whitaker and told him that he would receive his severance pay based on his Learning Specialist position, not Senior Director of Human Resources as he believed he was promised. (*Id.* at ¶ 153.) Further, Ciena would not verify to prospective employers that his last position with Ciena was Senior Director of Human Resources because "it was impossible for Ciena's system to verify a previous job title." (*Id.* at ¶ 154.) After Plaintiff was terminated, Ms. Wagner—the Caucasian female he had trained to take his Senior Director position—was promoted to Vice President. (*Id.* at ¶ 159.)

On January 4, 2018, Plaintiff filed this action against Ciena alleging race discrimination in violation of 42 U.S.C. § 1981. (Compl., ECF No. 1.) Subsequently, Defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 7), arguing that all of Plaintiff's claims are time-barred by the applicable § 1981 statute of limitations. (ECF No. 7.) On March 26, 2018, Plaintiff filed a Motion for Leave to File an Amended Complaint. (ECF No. 17.)

## STANDARD OF REVIEW

A plaintiff may amend his or her complaint once "as a matter of course at any time before a responsive pleading is served" or "by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Rule 15(a) requires that leave "shall be freely given when justice so requires." *Id.* The United States Court of Appeals for the Fourth Circuit has held that Rule 15 "gives effect to the federal policy in favor of resolving cases on their merits

instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99 (1957)). A district court may deny leave to amend, however, "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 200 (4th Cir. 2014) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986)).

## ANALYSIS

### I. Plaintiff's Motion to Amend

"'Leave to amend should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face.'" *Tawwaab v. Virginia Linen Service, Inc.*, 729 F.Supp.2d 757, 770 (D. Md. 2010) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986)). An amendment is insufficient or frivolous if it would not survive a motion to dismiss. *Id.* (citing *Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995)). Plaintiff moves to Amend the Complaint to "add[] additional facts surrounding Defendant Ciena's violation of the parties' agreement regarding how Ciena agreed to terminate Plaintiff." (ECF No. 17 at 4) (emphasis omitted). Defendant opposes the Motion to Amend as futile, arguing that all of Plaintiff's alleged adverse employment actions are time-barred under the applicable statute of limitations. Alternatively, Defendant argues that even if one of Plaintiff's alleged adverse employment actions—the failure to uphold the severance agreement—is timely, he has not alleged that it was the result of intentional race

6

discrimination. For the reasons explained below, Plaintiff's proposed Amended Complaint is not clearly insufficient or frivolous because it is unclear from the limited briefing on the Amended Complaint whether, as a matter of law, his claims are timely.

Plaintiff Whitaker alleges that Defendant Ciena intentionally discriminated against him because of his race by not promoting him to Vice President when the position became vacant prior to August of 2012; transferring him to Senior Director of Ciena Learning Services in August of 2012; eliminating this position in November of 2012; terminating him from his final position with the company and sending him a final termination letter on December 27, 2013; and making fraudulent misrepresentations concerning the severance agreements, which he learned on January 10, 2014.

To determine whether these claims are timely, this Court must first determine the appropriate statute of limitations for each claim. Claims brought under 42 U.S.C. § 1981 are subject to either the "most appropriate or analogous state statute of limitations" or a four-year statute of limitations. *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 371, 124 S. Ct. 1836 (2004) (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S. Ct. 2617 (1987)). As the United States District Court for the District of Columbia summarized in *Graves v. District of Columbia*, 777 F. Supp. 2d 109 (D.D.C. 2011), initially all claims brought under § 1981 were subject to the "most appropriate or analogous state statute of limitations." 777 F. Supp. 2d at 115-16 (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S. Ct. 2617 (1987)). The Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, however, expanded the claims that could be brought under § 1981 by enacting § 1981(b) to address post contract-formation conduct that was previously non-actionable. *Id.* (citations omitted).

7

Subsequently, in *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 383, 124 S. Ct. 1836 (2004), the United States Supreme Court held that a "catch-all" four-year statute of limitations applies to claims "made possible by a post-1990 enactment." 541 U.S. at 382, 124 S. Ct. 1836. Accordingly, the applicable statute of limitations on a § 1981 claim depends on whether the conduct arises under § 1981(a) or § 1981(b). *Graves*, 777 F. Supp. 2d at 116 (citing 28 U.S.C. § 1658(a)).

As to when the statute of limitations begins to run, a cause of action for discrimination accrues "on the date that the alleged unlawful conduct occurred." *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, No. 12-1724, 510 F. App'x 223, 227 (4th Cir. Feb. 14, 2013). As the Supreme Court held in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S. Ct. 498 (1980)), the unlawful conduct occurs when the plaintiff is informed of the allegedly discriminatory decision or practice. 449 U.S. at 258, 101 S. Ct. 498; *Jeandron*, 510 F. App'x at 227. In *Ricks*, the plaintiff's limitations period for his Title VII and § 1981 termination claims began to run when the defendant college informed the plaintiff that he would be denied tenure. 449 U.S. at 258. Although the plaintiff continued to work at the college during his remaining one-year term, the denial of tenure gave him "explicit notice that his employment would end" and the remaining year of teaching was simply an "inevitable consequence." *Id.* The "*Ricks* rule" has been applied in many contexts, including claims brought under § 1981(b) after the Supreme Court announced the four-year "catch-all" provision. *See Crump v. Montgomery County Educ. Ass'n*, No. PWG-14-229, 2014 WL 4784329, at *5 (D. Md. Sept. 23, 2014) (applying *Ricks* to determine when the four-year statute of limitations for discriminatory termination began to run). With these principles in mind, this Court examines

8

the timeliness of Plaintiff's claims in two categories.

### a. Plaintiff's claims of failure to promote, transfer, and elimination of position

Essentially, Whitaker asserts that these three claims are timely under the continuing violations doctrine. Specifically, he alleges that: (1) he was not promoted to Vice President when the position became vacant prior to August of 2012; (2) he was transferred to Senior Director of Ciena Learning Services later that month; and (3) subsequently, this position was eliminated in November of 2012. Plaintiff filed his Complaint on January 4, 2018. Therefore, ordinarily under a three or four-year statute of limitations, Whitaker's claims for failure to promote, transfer, and elimination of position would be untimely filed. However, Whitaker argues that these claims have been timely filed under the continuing violations doctrine.

The continuing violations doctrine "permits 'incidents outside of the statutory period to survive if they relate to a timely incident as a series of separate but related acts amounting a continuing violation.'" *Karim v. Staples*, 210 F. Supp. 2d 737, 749 (D. Md. 2002) (quoting *Lambert v. Washington Suburban Sanitary Comm'n*, 93 F. Supp. 2d 639, 642 (D. Md. 2000) (internal quotations omitted). Under the doctrine, "discrete discriminatory acts are *not* actionable if time barred, even when they are related to acts alleged in timely filed charges." *National Railroad Passenger Corp v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061 (2002) (emphasis added). In *Morgan*, the United States Supreme Court specifically identified "termination, failure to promote, denial of transfer, [and] refusal to hire" as discrete acts, *id.* at 114, 122 S. Ct. 2061, and also indicated that "'discrete discriminatory acts' is a very broad category." *Lewis v. Norfolk Southern Corp.*, 271 F. Supp. 2d 807, 813 (E.D. Va. 2003).

Plaintiff asserts that his claims detail "a story of a series of violative incidents which

9

intricately linked to the next." (ECF No. 13 at 4.) Despite Plaintiff's categorization of these events, they are the exact type of discrete acts that are not actionable under the doctrine. *See Morgan*, 536 U.S. at 114, 122 S. Ct. 2061 (explaining that "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts); *see also Chacko v. Patuxent Institution*, 429 F.3d 505, 511 n. 2 (4th Cir. 2005) (noting the plaintiff's administrative charge had also included "two other discrete acts of discrimination, failure to promote and retaliatory demotion"). Accordingly, the proposed Amended Complaint would be futile as to these claims because they are untimely and cannot support Plaintiff's § 1981 claim.

### b. Plaintiff's claims of termination and fraudulent misrepresentation

However, Whitaker also alleges that he was "terminated . . . in violation of the parties' agreement to sever him in a manner which would protect his career." (ECF No. 17 at ¶ 17.) Specifically, he alleges that when he was initially approached to transfer out of his Senior Director of Human Resources position to Senior Director of Learning Services in the sales department, he was promised that in the event he was terminated he would receive severance pay based on the Senior Director of Human Resources position and Ciena would verify that as Whitaker's title to future prospective employers. When the Senior Director of Learning Services position was then eliminated for "lack of funding," he was again promised an identical severance package in his subsequent role as an entry-level salesman. In November of 2013, this position was also eliminated because his "role was not effective." (ECF No. 17-2 at ¶¶ 138-41.)

On December 27, 2013, he received a final termination letter that stated he "would receive a severance payment of 12 weeks of his 'regular base salary' and that Ciena would

10

verify his 'title,' to perspective employers." (*Id.* at ¶ 147.) From this letter, however, he contends that he could not determine whether Ciena was honoring the severance agreement. Ultimately on January 10, 2014, he learned that Ciena would not be honoring the agreement. (*Id.* at ¶ 151.) Therefore, Whitaker contends that this Complaint filed on January 4, 2018, was timely filed within the four-year limitations period.

For purposes of statute of limitations analysis, it is well-established under Federal Rule of Civil Procedure 15 that the filing of an Amended Complaint dates back to the filing of the Original Complaint.[5] Accordingly, the timeliness of Whitaker's claims relating to his termination and the severance agreement remain before this Court. As explained above, which statutes of limitations applies to a claim depends on whether the cause of action relates to "pre-contract formation" and could have been brought under § 1981 as originally enacted or relates to "post-contract formation" made possible by § 1981(b). The limited briefing on the Amended Complaint does not establish clearly as a matter of law whether his claims relate to pre or post-contract formation, and relatedly, when the applicable time periods began running. Clearly, if a four-year statute of limitations began to run on January 10, 2014, Plaintiff timely filed an adverse employment action on January 4, 2018 to support his claim. Therefore, with regard to the statute of limitations argument, this legal issue remains and Defendant may reassert this argument as to the Amended Complaint.

Finally, Defendant also asserts that if Plaintiff's severance agreement claim is timely, the Amended Complaint is futile because he has not pled that failing to honor the severance

---

[5] Federal Rule of Civil Procedure 15(c)(1) provides in relevant part that "an amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1).

agreement was an act of intentional discrimination. As the United States Court of Appeals for the Fourth Circuit stated in *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006), to prove a § 1981 claim "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." (citations omitted). A plaintiff can either provide direct evidence of discriminatory intent or apply the burden-shifting scheme established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnel Douglas* framework, a plaintiff states a *prima facie* case of discrimination by showing that (1) she or he is a member of a protected class; (2) her or his job performance was satisfactory; (3) she or he was subjected to an adverse employment action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" *Swaso v. Onslow County Bd. of Educ.*, No. 16-2347, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)).

It is undisputed that Plaintiff is a member of a protected class and he has also alleged that he was an "immediate star" in his final Learning Specialist position, exceeded his monthly sales quotas, and "received every commission, bonus, and restricted stock gift he was capable of earning." (ECF No. 17-2 at ¶¶ 137-39.) Turning to the fourth prong of *McDonnell Douglas*, when ruling on a motion to dismiss, "a court should not dismiss a complaint 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'" *Stanislaus v. White*, 192 F. Supp. 2d 426, 430-31 (D. Md. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).

12

Plaintiff has alleged, among other things, that he attempted to implement a diversity program, two of his positions were allegedly eliminated for "lack of funding" or because his "roll was not effective," the company ultimately promoted a Caucasian female to his desired Vice President position, and then finally Ciena failed to honor the severance agreement that the company promised Whitaker twice because it was "impossible" to honor. On these facts, Whitaker has adequately alleged circumstances giving rise to an inference of unlawful discrimination and the Amended Complaint is not clearly insufficient or frivolous on its face. Accordingly, Plaintiff's Motion for Leave to file an Amended Complaint (ECF No. 17) is GRANTED.

## II. Effect on Defendant's Motion

Defendant filed a Motion to Dismiss the Original Complaint, or in the Alternative, Motion for Summary Judgment. (ECF No. 7.) "As a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)). Accordingly, a court may then deny a motion to dismiss the original pleading as moot. *Turner v. Knight*, 192 F.Supp.2d 391, 397 (D. Md. 2002). Unlike a motion to dismiss, however, a motion for summary judgement generally focuses on the merits of the substantive claims and therefore is not mooted by an amended complaint. *See Buechler v. Your Wine & Spirits Shoppe, Inc.*, 846 F. Supp. 2d 406, 415 (D. Md. 2012), *aff'd*, 479 F. App'x 497 (4th Cir. 2012) ("However, the motion was . . . also brought under Rule 56, seeking summary judgment. And [the defendant's] motion for summary judgment was not mooted by [the] amended complaint because such a motion is not directed at the adequacy

of a complaint's allegations but is instead focused on the merits of the substantive claim.").

Here, Defendant's Motion, whether treated as a motion to dismiss or motion for summary judgment, is solely focused on whether Plaintiff's claims are timely. As explained above, the limited briefing on the Amended Complaint does not show that Plaintiff's claims are clearly untimely or that judgment should be entered as a matter of law in favor of Ciena. Therefore, this Court grants Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 17). Accordingly, Defendant's Motion to Dismiss the Original Complaint is DENIED AS MOOT and the Defendant's alternative Motion for Summary Judgment is DENIED WITHOUT PREJUDICE.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Leave to file an Amended Complaint (ECF No. 17) is GRANTED and Defendant's Motion (ECF No. 7) is DENIED. Specifically, Defendant's Motion to Dismiss the Original Complaint is DENIED AS MOOT and the Defendant's alternative Motion for Summary Judgment is DENIED WITHOUT PREJUDICE.

A separate order follows.

Dated:  July 27, 2018                                          /s/

                                                                     Richard D. Bennett
                                                                     United States District Judge