IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARYL WHITAKER,            *

                              *

    Plaintiff,            Civil Action No. RDB-18-0044

                              *

v.            *

CIENA CORPORATION,            *

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Daryl Whitaker ("Plaintiff" or "Whitaker") brings this action against his former employer Defendant Ciena Corporation ("Defendant" or "Ciena") alleging race discrimination in violation of 42 U.S.C. § 1981. (Am. Compl., ECF No. 23.) In its prior ruling, this Court held that the proposed Amended Complaint would be futile as to claims of failure to promote, transfer, and elimination of position because they were clearly untimely. (Mem. Op. 10, ECF No. 21.) Specifically, those claims related to events in 2012 and Whitaker did not file his initial Complaint until January 4, 2018. However, with regard to Whitaker's allegations relating to his termination and severance agreement, this Court stated that "the limited briefing on the Amended Complaint does not show that Plaintiff's claims are clearly untimely or that judgment should be entered as a matter of law in favor of Ciena." (*Id.* at 14.) Accordingly, this Court granted Plaintiff's motion to file the Amended Complaint as to these

two claims and denied without prejudice Ciena's motion related to the original complaint.[1] (*Id.*)

This Court has now had the opportunity to review more extensive briefing on the discrete legal issue of whether Plaintiff's allegations related to his termination and severance agreement are timely. Currently pending is Defendant's Motion to Dismiss Plaintiff's Amended Complaint, or Alternatively, Motion for Summary Judgment (ECF No. 24). The matter is ripe for disposition, and a hearing is deemed unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, Defendant's motion, construed as a motion to dismiss, shall be GRANTED, and the Amended Complaint shall be DISMISSED as time-barred.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). In brief,[2] Whitaker began working for Ciena in August 2010 as the Senior Director of Human Resources for the company's Global Field Operations division. (Am. Compl. ¶¶ 4, 56, ECF No. 23.) In August 2012, Ciena's then-current Executive Vice President, David Rothenstein ("Rothenstein"), approached Whitaker and asked if he would become Senior Director of Ciena Learning Services in the sales department. (*Id.* at ¶¶ 108-09.) Rothenstein promised that if the job did not work out, the company would provide

---

[1] Specifically, Defendant's Motion to Dismiss the Original Complaint was denied as moot, and the Defendant's alternative Motion for Summary Judgment was denied without prejudice. (Mem. Op. 14, ECF No. 21.)
[2] For a more detailed background, see this Court's Memorandum Opinion (ECF No. 21).

2

a severance package based on Whitaker's job title and pay as the Senior Director of Human Resources. (*Id.* at ¶¶ 113-14.) Whitaker accepted the sales position on those terms. (*Id.* at ¶ 118.)

Three months after starting his new position, in November 2012, Whitaker was informed by Rothenstein that the new position was being eliminated for lack of funding. (*Id.* at 119-22.) Whitaker was not terminated but found himself a position as an entry-level salesman or "Learning Specialist." (*Id.* at ¶¶ 126, 128-31, 135.) Whitaker alleges that he was told by Jim Caprara ("Caprara"), the Vice President and General Manager of Learning Services, that if the position was eliminated, Whitaker would receive a severance package based on his Senior Director level. (*Id.* at ¶¶ 128-33.) Whitaker started as a Learning Specialist in February 2013. (*Id.* at ¶ 135.)

In November 2013, Caprara told Whitaker that his position was being eliminated. (*Id.* at ¶ 141.) On December 20, 2013, Whitaker received a termination/severance letter, which was dated December 16, 2013. (*Id.* at ¶ 143.)[3] The termination/severance letter was revised on December 27, 2013, and Whitaker received it in late December. (*Id.* at ¶ 144.) Whitaker contends that he could not ascertain from the letter whether he was to receive the severance package that he had been promised by Rothenstein/Caprara, i.e., pay and title of Senior Director. (*Id.* at ¶ 145-48.) Whitaker asked Human Resources for clarification, but he did not receive clarification until after his last day of employment, which was January 10, 2014. (*Id.* at ¶ 149-51.) Whitaker was then advised that the severance pay would be based on the

---

[3] Both Defendants and Whitaker filed a copy of the letter with their briefs. (ECF Nos. 24-2, 27-1.) This Court can properly consider the letter at the motion-to-dismiss phase. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Learning Specialist position, and that it was not possible to verify a previous job title. (*Id.* at ¶ 153-54.)

Whitaker alleges that he had difficulty finding a suitable position because his Senior Director job title could not be verified. (*Id.* at ¶¶ 168-70.) He asserts that "Defendant's ongoing and continuous misrepresentation and subsequent termination in violation of the Rothenstein and Caprara severance agreement constitute[s] intentional discrimination against Plaintiff based upon his race . . . ." (*Id.* at ¶ 205.)

Whitaker filed this action against Ciena on January 4, 2018, alleging race discrimination in violation of 42 U.S.C. § 1981. (Compl., ECF No. 1.) Ciena responded with a Motion to Dismiss the Original Complaint or in the Alternative, Motion for Summary Judgment (ECF No. 7), arguing that all of Whitaker's claims are time-barred by the applicable § 1981 statute of limitations. Whitaker then filed his Motion to Amend (ECF No. 17), in which he expanded upon the termination and severance allegations. As described above, this Court ruled on those motions leaving one discrete legal issue pending: are the termination and severance actions as alleged in the Amended Complaint timely? For the reasons that follow, this Court holds that Whitaker's claim is time-barred, and Defendant's pending motion (ECF No. 24) shall be GRANTED.

**STANDARD OF REVIEW**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule

4

12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To satisfy Rule 8(a)(2), a complaint need not include "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

Generally, a motion to dismiss filed under Rule 12(b)(6) cannot reach the merits of an affirmative defense, such as whether a plaintiff's claim is time-barred. *Goodman v. Praxair*, Inc., 494 F.3d 458, 464 (4th Cir. 2007). It is possible to evaluate such a motion, however, if all the facts necessary to the affirmative defense are clearly alleged on the face of the complaint. *Id.*; *accord Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

## ANALYSIS

### I. A Four-Year Statute of Limitation Applies

To determine whether Whitaker's claim is timely, this Court must first determine the appropriate statute of limitations. Claims brought under 42 U.S.C. § 1981 are subject to either the "most appropriate or analogous state statute of limitations" or a four-year statute of limitations. *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)). As the United States District Court for the District of Columbia summarized in *Graves v. District of Columbia*, 777 F. Supp. 2d 109 (D.D.C. 2011),

initially all claims brought under § 1981 were subject to the "most appropriate or analogous state statute of limitations." 777 F. Supp. 2d at 115-16 (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)). The Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, however, expanded the claims that could be brought under § 1981 by enacting § 1981(b) to address post-contract-formation conduct that was previously non-actionable. *Id.* (citations omitted). Subsequently, in *Donnelley*, 541 U.S. at 383, the United States Supreme Court held that a "catch-all" four-year statute of limitations applies to claims "made possible by a post-1990 enactment." 541 U.S. at 382. Accordingly, the applicable statute of limitations on a § 1981 claim depends on whether the conduct arises under § 1981(a) or § 1981(b). *Graves*, 777 F. Supp. 2d at 116 (citing 28 U.S.C. § 1658(a)).

In this case, the complained-of conduct is that Whitaker was "terminated . . . in violation of the parties' agreement to sever him in a manner which would protect his career." (Am. Compl. ¶ 17, ECF No. 23.) Such conduct is post-formation conduct that was not protected under § 1981(a). *See, e.g.*, *Patterson v. McLean Credit Union*, 491 U.S. 164, 176–77 (1989) (describing the right to make contracts as extending "only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment," and excluding "conduct by the employer after the contract relation has been established, including breach of the terms of the contract"); *Donnelley*, 541 U.S. at 383 ("The 1991 Act overturned *Patterson* by defining the key "make and enforce contracts" language in § 1981 to include the 'termination of contracts . . . .'"). Therefore, this Court shall apply the four-year statute of limitations.

## II. The Limitations Period Has Run

As to when the statute of limitations begins to run, a cause of action for discrimination accrues "on the date that the alleged unlawful conduct occurred." *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, No. 12-1724, 510 F. App'x 223, 227 (4th Cir. Feb. 14, 2013) (citing *Martin v. Southwestern Virginia Gas Co.,* 135 F.3d 307, 310 (4th Cir.1998). As the Supreme Court held in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), the unlawful conduct occurs when the plaintiff is informed of the allegedly discriminatory decision or practice. 449 U.S. at 258. The Supreme Court reiterated this principle the following year in *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) (citing *Ricks*, 449 U.S. at 258), noting that "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." (emphasis in original). These principles have been recognized by the United States Court of Appeals for the Fourth Circuit in *Jeandron*, 510 F. App'x at 227. In *Ricks*, the plaintiff's limitations period for his Title VII and § 1981 termination claims began to run when the defendant college informed the plaintiff that he would be denied tenure. 449 U.S. at 258. Although the plaintiff continued to work at the college during his remaining one-year term, the denial of tenure gave him "explicit notice that his employment would end" and the remaining year of teaching was simply an "inevitable consequence." *Id.*

The "*Ricks* rule" has been applied in many contexts, including claims brought under § 1981(b) after the Supreme Court announced the four-year "catch-all" provision. *See Crump v. Montgomery Cty. Educ. Ass'n*, No. PWG-14-229, 2014 WL 4784329, at *5 (D. Md. Sept. 23, 2014) (applying *Ricks* to determine when the four-year statute of limitations for discriminatory termination began to run). The *Ricks* Court cautioned that "[c]omplaints that employment

7

termination resulted from discrimination present widely varying circumstances" and, accordingly, "the application of the general principles discussed herein necessarily must be made on a case-by-case basis." 449 U.S. at 258 n. 9.

In discrimination cases, "the time limitation starts from when the discriminatory act occurred, not when it was discovered." *Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015) (citing *Hamilton v. 1st Source Bank*, 928 F.2d 86, 87-88 (4th Cir.1990) (en banc)). "An 'occurrence' is a discrete event, whereas a plaintiff's acquisition of knowledge is a continuing process. One can never be sure exactly when on that continuum of awareness a plaintiff knew or should have known enough that the limitations period should have begun." *Hamilton*, 928 F.2d at 88. "To the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period." *Id.* at 88-89.

In this case, the alleged discriminatory act that is the triggering event for accrual is Whitaker's termination "at an entry-level sales position in violation of the . . . severance agreements." (Am. Compl. ¶ 208, ECF No. 23.) Ciena's action occurred no later than "late December" 2013; Whitaker was notified in November and December 2013. (*Id.* at ¶141, 143-44.) Therefore, the limitations period began to run no later than "late December" 2013. There are no discrete discriminatory acts that occurred later than that date. Rather, Whitaker alleges that Rothenstein's misrepresentation occurred in August 2012, and Caprara's misrepresentation occurred in February 2013. (*Id.* at ¶¶ 202-05.) Although Whitaker may not have fully understood the repercussions of Ciena's acts until after January 10, 2014, under *Ricks* and *Chardon*, the limitations period commences at the time the adverse employment

8

decision is made and communicated, i.e., December 2013, not when "the consequences of the act become painful." *Ricks*, 449 U.S. at 258-259; *Chardon*, 454 U.S. at 8.

Whitaker has made serious allegations against Ciena, but more than four years passed between the accrual of his claim in late December 2013 and the filing of his first complaint on January 4, 2018. Accordingly, the statute of limitations has run, and Whitaker's § 1981 claim is barred.

## CONCLUSION

For the foregoing reasons:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint, or Alternatively, Motion for Summary Judgment (ECF No. 24) is GRANTED.
2. Plaintiff's claims against Defendant in Amended Complaint (ECF No. 23) are DISMISSED.

A separate order follows.

Dated: March 25, 2019.

_____/s/_____
Richard D. Bennett
United States District Judge